**Joan HOFFMAN and Gerald Hoffman, Appellants,**

v.

**Kenneth ROTSKOFF, D.D.S., Respondent.**

**No. 49613.**

Missouri Court of Appeals, Eastern District, Division Three.

March 18, 1986.

Motion for Rehearing and/or Transfer Denied April 15, 1986.

Case Transferred to Supreme Court May 13, 1986.

Case Retransferred to Court of Appeals Sept. 25, 1986.

Original Opinion Reinstated Sept. 26, 1986.

---

Milton L. Schwartz, Schwartz, McCoy, Herman & Davidson, St. Louis, for appellants.

Robert E. Keaney, Thomas Carter, II, St. Louis, for respondent.

GARY M. GAERTNER, Judge.

Plaintiffs, Joan Hoffman and her husband, Gerald Hoffman, brought this medical malpractice action against defendant, Kenneth Rotskoff, D.D.S., alleging that defendant had negligently performed surgery to remove Mrs. Hoffman's wisdom teeth. Plaintiffs further alleged that defendant failed to obtain Mrs. Hoffman's informed consent prior to the surgery. The jury returned a verdict in favor of defendant, and plaintiffs moved for a new trial. After a hearing, the trial court issued an order denying plaintiffs' motion. Plaintiffs appeal from that order. We affirm.

In their first point on appeal, plaintiffs contend that the trial court erred in refusing to grant a new trial for alleged juror misconduct. Specifically, plaintiffs allege that, during voir dire examination of the jury panel, one of the prospective jurors, Frances Secrist, intentionally concealed requested information.[1] Plaintiffs argue that such misconduct denied them their

---

1. Plaintiffs also allege misconduct on the part of another prospective juror, Melvin Krah. We reject this contention on two grounds. First, because plaintiffs did not mention Mr. Krah's alleged misconduct in their motion for a new trial, and thus did not properly preserve that issue for appeal. *Bowman v. Burlington Northern, Inc.,* 645 S.W.2d 9, 12–13 (Mo.App.1982). Second, because plaintiffs do not specifically allege—and our review of the record does not indicate—that Mr. Krah failed to candidly or truthfully respond to any particular voir dire question. As a related matter, defendant's motion to strike Mr. Krah's affidavit from the record on appeal is hereby denied.

constitutional right to an impartial panel of twelve jurors.

During voir dire, plaintiffs' counsel asked the jury panel the following question:

Is there anybody on the panel whose immediate family has been sued, or anyone on the panel who's personally been sued for causing personal injury to anybody; whether it was a car wreck or a fall down stairs, or whatever?

In response to this question, six panel members volunteered information about claims brought by or against them. At least three of those claims involved automobile accidents. Juror Secrist did not respond to this question.

At the hearing on plaintiffs' motion for a new trial, plaintiffs introduced evidence establishing the following: On December 3, 1973, Mrs. Secrist's daughter, Linda Secrist, was involved in an automobile accident. At that time, Linda Secrist was living at home with her parents. She was driving her father's car when the accident occurred, and the car was covered under her parents' automobile liability insurance policy. In January 1975, a driver of one of the other vehicles involved in the accident brought suit against Linda Secrist for injuries arising out of that accident. During 1976 and 1977, Linda Secrist's insurer wrote at least three litigation-related letters to her and addressed them to her parents' home. On February 10, 1978, a jury awarded damages of $50,000 to the other driver. Because Linda Secrist's automobile insurance coverage totalled only $10,000, the other driver subsequently filed a garnishment action against her in the amount of $44,496.16.

Evidence adduced at the hearing further established that on July 28, 1981, Linda Secrist brought suit against her parents' automobile liability insurer, alleging that the insurer had acted in bad faith in failing to settle the claim against her. In her petition, Linda Secrist prayed for actual damages in the amount of $100,000 for "mental strain, stress and emotional instability" caused by the insurer's actions, and

further requested punitive damages in the amount of $1,000,000. This claim was settled out of court.

At the hearing, Mrs. Secrist testified that she remembered hearing the voir dire question about previous claims, and remembered the other panel members offering responses. She claimed, however, that at that time she "just plain forgot" about the claim against her daughter, and that it "didn't even enter [her] mind" until the attorneys contacted her after trial. She explained that although her daughter lived at home at the time of the accident, she had moved out of the house by the time suit was brought against her in January 1975. Mrs. Secrist claimed that her daughter thereafter intentionally kept her from learning the details of the litigation, primarily because Mrs. Secrist's husband was ill with a heart condition. Mrs. Secrist testified that she knew at one time that a judgment had been entered against her daughter, but never knew the amount thereof. She denied ever having any knowledge of the garnishment action or the bad faith claim until she was contacted after trial in the instant case. She testified that she does not have a good memory because of a heart condition.

Linda Secrist also testified at the hearing. She testified that her mother never went to the scene of the accident, and had nothing to do with the subsequent litigation. All papers pertaining to the litigation were served on Linda Secrist at her place of employment. She testified that she never told her parents anything about the $50,000 judgment or the garnishment action. She further testified that she visits her mother regularly, and that her mother's memory is "not good at all."

After considering this evidence, the trial court overruled plaintiffs' motion for a new trial, finding no basis for the allegation of juror misconduct. The court explained that it "found the testimony of Frances Secrist and Linda Secrist to be credible and [found] that juror Frances Secrist did not intentionally conceal any information pertaining to

Linda Secrist's prior accident and lawsuits."

We must review the issue of juror misconduct in light of the principles set forth by our Supreme Court in *Rinkenbaugh v. Chicago, Rock Island & Pacific Railroad Company*, 446 S.W.2d 623, 626 (Mo.1969):

> The constitutional right of every citizen to trial by jury to be meaningful contemplates a fair and impartial jury; it is the duty of a juror on voir dire examination to fully, fairly and truthfully answer all questions directed to him (and to the panel generally) so that his qualifications may be determined and challenges may be intelligently exercised; a prospective juror may not be the judge of his own qualifications; bias and prejudice of a juror may be inferred from his intentional concealment of such information, the determination of which question must be left to the sound discretion of the trial court; and the exercise of that discretion is subject to judicial review.

In *Anderson v. Burlington Northern Railroad Company*, 651 S.W.2d 176, 178 (Mo.App.1983), this court further explained the development of the rule prohibiting intentional concealment:

> [T]he courts have almost universally ordered a new trial where the failure to disclose was made with the juror's understanding of the question and his then present awareness of the prior experience. Where there exists no reasonable inability to comprehend the information solicited by the question asked of the prospective juror, and where it develops that the prospective juror actually remembers the experience or that it was of such significance that his purported forgetfulness is unreasonable, failure to disclose is held to be intentional. Intentional nondisclosure as determined by these factors, has become tantamount to a per se rule mandating a new trial regardless of the action taken by the trial judge in ruling upon the motion for a new trial.

In the case before us, then, the issue is whether the claims brought by and against Mrs. Secrist's daughter were so significant that Mrs. Secrist's purported forgetfulness is unreasonable.

Numerous Missouri cases have considered a prospective juror's excuse that he failed to recall or was unaware of a prior claim when asked about such claims during voir dire. Until recently, our appellate courts uniformly held that the trial court was justified in accepting this excuse and refusing to grant a new trial. *See, e.g., Knowles v. Goswick*, 476 S.W.2d 563 (Mo. 1972); *Akers v. St. Louis Public Service Co.*, 370 S.W.2d 347 (Mo.1963). *See generally* Annot., 38 A.L.R.4th 267, 291–95 (1985).

In *Frenette v. Clarkchester Corp.*, 692 S.W.2d 834 (Mo.App.1985), however, this court held that a prospective juror's purported forgetfulness was unreasonable and that a new trial was required. The court noted that earlier cases holding to the contrary had generally involved claims that were "insignificant or remote in time." *Id.* at 836. In *Frenette*, the prospective jurors were asked during voir dire whether any of them had previously filed any sort of claim. After trial, it was discovered that one prospective juror failed to disclose that his two sons were involved in an automobile accident thirteen years earlier, and that he had personally contacted an attorney and met with an insurance adjuster about the accident.[2] The evidence further indicated that this prospective juror had brought a personal injury suit on behalf of his injured son against the other son. His injured son received a judgment in the amount of $50,000, and he administered those funds for the son for several years thereafter. Given the significance of this prior claim, the court found that the prospective juror had intentionally concealed information during voir dire, and thus held that the trial court had abused its discretion in accepting the juror's excuse of forgetfulness.

**2.** Another juror in *Frenette* also failed to disclose a prior claim. He admitted that he remembered the claim during voir dire, but did not mention it because he believed it was an "improper claim." The court found that this also constituted intentional concealment.

In the case before us, plaintiffs argue that Mrs. Secrist's purported forgetfulness is unreasonable because the $50,000 judgment, the garnishment action and the bad faith claim were all filed within seven years of trial. Plaintiffs further observe that Mrs. Secrist's daughter was living at home when the accident occurred, and that the accident occurred when she was driving her father's automobile, which was insured by her parents. Plaintiffs also note that the insurance company addressed letters to the daughter at her parents' home, that the daughter was emotionally upset by the litigation against her, and that she has visited her mother regularly for several years. Under these circumstances, plaintiffs argue that it would be unreasonable to conclude that Mrs. Secrist failed to recall or was unaware of her daughter's prior litigation during voir dire.

Defendant contends, however, that according to the testimony of Mrs. Secrist and her daughter, Mrs. Secrist knew little or nothing about her daughter's litigation until after trial in the instant case. The testimony indicates that Linda Secrist made a conscious and sustained effort to keep her mother from learning anything about the litigation in which she was involved. Linda Secrist had moved out of her parents' home by the time any litigation was commenced, and all legal papers were served upon her at her place of employment. Mrs. Secrist took no active part in her daughter's litigation, and both she and her daughter testified that her memory is poor. Defendant contends that the accident and subsequent litigation remained a relatively insignificant event in Mrs. Secrist's life, and her contention that she forgot about it is thus entirely reasonable.

On its facts, we find that the case at bar is easily distinguishable from *Frenette*. In that case, the prospective juror was actually the plaintiff (on behalf of his son) in a previous personal injury suit, and was intimately involved with the litigation for several years. No such personal involvement with a prior claim is evident on the part of Mrs. Secrist. She did not go to the scene of the accident, she had no contact with attorneys or insurance adjusters, and she did not appear in court.[3]

The facts in the case at bar are more similar to a situation recently addressed by the Western District of our Court of Appeals. In *Stuart v. State Farm Mutual Automobile Insurance Co.*, 699 S.W.2d 450 (Mo.App.1985), an insured sued his insurer on a claim arising from an automobile accident. After a judgment was entered for the insured, the insurer discovered that during voir dire a prospective juror had failed to disclose a pending lawsuit brought by her and her husband. The lawsuit arose from her husband's automobile accident in 1976. Her husband sought to recover $4500 in damages from the insurer, while she prayed for $500 for loss of consortium. Despite this evidence, the Court of Appeals held that the trial court had not abused its discretion in accepting the juror's excuse that she forgot about the lawsuit during voir dire. The court noted that the juror had not been a passenger in any automobile involved in the collision, and that the suit had been handled entirely by her husband. The court also observed that the juror testified she did not discuss the matter with her husband, and she was not involved in her husband's affairs.

■ The instant case reveals a similar pattern of non-involvement on the part of Mrs. Secrist. She was not a participant in the accident, and she did not involve herself in her daughter's affairs. Mrs. Secrist, moreover, was not even a party to any prior claim, as was the juror in *Stuart*.[4]

---

**3.** Plaintiffs observe that in *Frenette* the prospective juror's son received a $50,000 judgment, which is the same amount as the judgment against Linda Secrist. While this coincidence is relevant to the concealment issue, the analysis used by the *Frenette* court indicates that the mere size of the judgment is not controlling. In determining the reasonableness of a prospective juror's purported forgetfulness, we must examine the totality of the circumstances surrounding the juror's excuse.

**4.** At oral arguments, plaintiffs cited us to this court's recent decision in *Williams v. Barnes Hospital*, No. 49260 (Mo.App.E.D. December 31,

We hold, therefore, that the trial court did not abuse its discretion in accepting as reasonable Mrs. Secrist's excuse that she forgot about her daughter's claims. Notwithstanding the circumstantial evidence presented by plaintiffs, the testimony of Mrs. Secrist and her daughter established that Mrs. Secrist had forgotten—or had never known—about the various claims until contacted after trial. The trial judge, who is in the best position to assess the credibility of witnesses, specifically found that the testimony of Mrs. Secrist and her daughter was credible. Accordingly, the trial court properly exercised its discretion in concluding that the forgotten claims were relatively insignificant, and that Mrs. Secrist did not intentionally conceal any information during voir dire. Because we have found no intentional concealment, the *Anderson* court's "per se rule mandating a new trial" is inapplicable. Our holding on this issue does not, therefore, in any way abrogate or conflict with principles established in previous decisions.

In their second point on appeal, plaintiffs argue that the trial court erred in excluding the profferred expert testimony of an experimental psychologist, Dr. Leslie Whitaker. According to plaintiffs' offer of proof, Dr. Whitaker specializes in evaluating warnings to determine whether they are sufficient to convey the risk of danger intended to be conveyed. Plaintiffs contend that her testimony was relevant to the issue of whether defendant obtained Mrs. Hoffman's informed consent prior to surgery.

It is undisputed that defendant severed Mrs. Hoffman's lingual nerve while removing her wisdom teeth, thereby causing her to lose the sense of taste and touch on the left side of her tongue. Mrs. Hoffman testified that the only warnings she received about this risk were given immediately prior to surgery when she was seated in the dental chair. At that time, she was handed a single sheet of paper, entitled "Questions About Impacted Teeth," which included the following information: "Sometimes numbness of the lip or tongue may develop from the removal of impacted teeth. This is usually temporary." Mrs. Hoffman was allowed two to three minutes to read this sheet. Plaintiffs concede that the "Questions" sheet provided sufficient information to warn Mrs. Hoffman of the relevant danger; plaintiffs contend, however, that the circumstances under which defendant conveyed the warnings prevented her from understanding and appreciating that danger.

Under Missouri law, a physician's duty to exercise ordinary skill in treating a patient includes the duty to warn the patient of the risks of surgery in a manner sufficient to allow the patient to give his informed consent to the surgery. *Douthitt v. United States*, 491 F.Supp. 891, 894 (E.D.Mo.1980). Plaintiffs properly assert that Dr. Whitaker's testimony was relevant to determining whether defendant warned Mrs. Hoffman of the danger to her lingual nerve in a manner sufficient to allow her to give her informed consent to the surgery. Plaintiffs further observe that similar evidence was held admissible in *Tennis v. General Motors Corp.*, 625 S.W.2d 218 (Mo.App. 1981). In that case, the court held that a trial court did not err in permitting an engineering psychologist to testify that a warning label inside an automobile was inadequate to warn users of certain dangers:

> Whether or not a given warning is sufficient depends upon its placement or location, the language used and how it may or may not impress the average user. The testimony of plaintiff's expert on the impact of the warning, considering its wording, design and placement was a proper subject for expert testimony.

*Id.* at 226. In the instant case, plaintiffs thus argue that the trial court erred in excluding such expert testimony.

1985), wherein a new trial was ordered because of intentional concealment by prospective jurors. On February 14, 1986, however, a motion for rehearing was granted in that action. The previously issued opinion is thus of no precedential value. We nevertheless observe that the claims of purported forgetfulness in that case reveal the same sort of personal involvement with prior litigation that distinguishes *Frenette* from the instant case.

■ Plaintiffs' argument fails, however, because a trial court does not commit reversible error merely by excluding expert testimony that is relevant and admissible. As the *Tennis* court emphasized, "the admission or exclusion of expert opinion testimony is a matter within the sound discretion of the trial court...." *Id.* at 226, *quoting McKinley v. Vize,* 563 S.W.2d 505, 511 (Mo.App.1978). An appellate court will not interfere with the exercise of that discretion unless it plainly appears that such discretion has been abused. *Cheek v. Weiss,* 615 S.W.2d 453, 456 (Mo.App.1981). In the instant case, Mrs. Hoffman gave extensive testimony about the circumstances surrounding the warnings given to her by defendant. Therefore, even in the absence of Dr. Whitaker's testimony, the jury possessed sufficient information to determine whether defendant obtained Mrs. Hoffman's informed consent. Accordingly, the trial court did not abuse its discretion in excluding the expert testimony.

■ In their third point on appeal, plaintiffs argue that the trial court erred in discriminatorily and prejudicially enforcing the rule excluding witnesses from the courtroom. This rule was not in force on the first day of trial, when plaintiffs' first expert witness testified on direct examination. Before trial began on the second day, defendant moved to exclude witnesses from the courtroom. Plaintiffs objected to such exclusion, arguing that some of defendant's witnesses may have been in the courtroom on the first day, thereby gaining the advantage of hearing plaintiffs' expert witness testify. The trial court overruled plaintiffs' objection and granted defendant's motion after defense counsel advised the court that none of defendant's anticipated witnesses was in the courtroom on the previous day.

The decision to sequester witnesses remains within the sound discretion of the trial court, and will not be reversed absent a clear showing of abuse and prejudice. *Spaunhorst v. Spaunhorst,* 650 S.W.2d 650, 655 (Mo.App.1983). In the instant case, plaintiffs have made no showing that they were prejudiced by the trial court's sequestration of witnesses, and we will not infer prejudice from the circumstances. Accordingly, we find no abuse of discretion.

Judgment affirmed.

KAROHL, P.J., and SIMON, J., concur.