**Joe DESTIN, Jr., Appellant,**

v.

**SEARS, ROEBUCK AND COMPANY, Respondent.**

**No. WD 43188.**

Missouri Court of Appeals, Western District.

Dec. 26, 1990.

Motion for Rehearing and/or Transfer to Supreme Court Denied Jan. 29, 1991.

Application to Transfer Denied March 5, 1991.

Glenn Edward Bradford, Kansas City, for appellant.

Thomas Scott Stewart, Kansas City, for respondent.

Before BERREY, P.J., and FENNER and ULRICH, JJ.

FENNER, Judge.

Appellant, Joe Destin, Jr., appeals from a jury verdict in his favor and against respondent, Sears, Roebuck & Co., in the amount of $2,608.05.

On November, 5, 1984, Destin tripped over an extension cord on the floor of a Sears' store. The severity of Destin's injuries was contested. At trial, Destin attempted to call a chiropractor, Dr. Kelly Miller, as an expert in thermography.[1] At this point the court took up for consideration a motion in limine that had been filed by Sears prior to trial, but by agreement was held in abeyance until Dr. Miller was called to testify. In its motion, Sears sought to have Destin's testimony excluded arguing that thermography does not enjoy general scientific acceptance and that it is inherently unreliable.

After hearing testimony from Dr. Miller, outside the presence of the jury, the court sustained Sears' motion and precluded Dr. Miller from testifying. The court did not state a specific reason for its ruling.

In his sole point on appeal, Destin argues that the trial court erred in refusing to allow Dr. Miller's testimony generally on the subject of thermography and specifically in regard to Dr. Miller's thermographic examinations of him. Destin argues that Dr. Miller established that thermography is generally accepted in the field of chiropractic and that Dr. Miller's testimony would have proven and substantiated his claim of permanent injury to his lower back and knees.

■ In Missouri, the results of scientific tests, and expert opinions derived from them, are admissible only if the scientific principle involved is considered generally reliable and accurate by the scientific community concerned. *Imms v. Clarke*, 654 S.W.2d 281, 284 (Mo.App.1983); citing *Frye v. United States*, 293 F. 1013, 1014 (D.C. Cir.1923).

Dr. Miller testified that thermography is generally accepted by the chiropractic profession as a reliable diagnostic tool. Dr. Miller admitted that thermography is not generally accepted by the medical profession. Sears argues that since thermography is not generally accepted by the medical profession, it does not meet the requisite approval by the relevant scientific community.

■ Chiropractors may testify on matters within the purview of subjects which the statutes authorize for the practice of chiropractic. *Harder v. Thrift Const. Co.*, 53 S.W.2d 34 (Mo.App.1932). Chiropractors are statutorily authorized to practice chiropractic by the methods commonly taught in any chiropractic college recognized and approved by the state board of chiropractic examiners. § 331.010.2 RSMo 1986.

■ Dr. Miller was called as an expert in the field of chiropractic which makes the relevant scientific community the chiropractic community. Dr. Miller testified that thermography is a diagnostic tool accepted within the field of chiropractic that is sanctioned by chiropractic colleges and the state board of chiropractic examiners. There is nothing in the record before us to refute Dr. Miller's testimony in this regard. The difference of opinion between the medical profession and the chiropractic profession, evidenced in the record on the subject of thermography, goes to the weight and value of the evidence and would not of itself be a bar to admissibility.

Sears argues further that even if thermography is a proper subject for expert testimony, there was no specific offer of proof to show what Dr. Miller's testimony

---

1. Thermography is defined in Dorland's Illustrated Medical Dictionary, Twenty–Fifth Edition, as a technique wherein an infrared camera is used to photographically portray the surface temperatures of the body, based on the self-emanating infrared radiation.

would have been in relation to his examination of Destin.

Dr. Miller's testimony was chiefly directed to the question of whether thermography was a proper subject for expert testimony. Destin did not make a specific offer of proof to show what Dr. Miller's testimony would be in regard to the thermographic examination of him. However, Dr. Miller did state that thermography could substantiate a patient's complaints of pain. Sears argues that without a specific offer of proof, appellate review of the exclusion of Dr. Miller's testimony is precluded.

■ The general rule is that appellate courts will not review excluded evidence without a specific and definite offer of proof. *Frank v. Environmental Sanitation Management, Inc.*, 687 S.W.2d 876, 883 (Mo. banc 1985). The exception to the rule is very narrow and involves a three prong test. First, there must be a complete understanding based on the record of what the excluded testimony would have been. Second, the objection must be to a category of evidence rather than to specific testimony. Third, the record must reveal that the evidence would have helped its proponent. *Id.* at 883–84.

First, we are able to glean from the record that Dr. Miller would have testified that the thermography test results substantiated Destin's complaints of pain. Secondly, the objection was to a category of evidence, thermography. However, satisfaction of the third prong of the test is much more doubtful. Nonetheless, we will review the trial court's exclusion of the evidence.

■ It is recognized that a trial court does not commit reversible error merely by excluding expert testimony even if it is relevant and admissible. *Hoffman v. Rotskoff*, 715 S.W.2d 538, 544 (Mo.App.1986). The admission or exclusion of expert testimony is a matter within the sound discretion of the trial court. An appellate court will not interfere with that discretion unless it appears that such discretion has been abused. *Id.* It is also generally proper to exclude cumulative evidence, *Tryon v. Casey*, 416 S.W.2d 252, 259 (Mo.App.1967),

and evidence that unnecessarily diverts the attention of the jury from the question to be decided. *State v. Taylor*, 663 S.W.2d 235, 239 (Mo. banc 1984).

■ The record reflects that there was conflicting evidence in regard to the extent of Destin's injuries, but there was substantial evidence received to support Destin's complaints. Destin offered testimony himself as to his injuries and also presented expert testimony to support his complaints. Dr. Glenn Barr, a physician and surgeon, testified that he had been treating Destin for a period of four years and that he had last seen Destin the month before trial. Dr. Barr's diagnosis of Destin's condition substantiated the injuries that Destin claimed to have received. Dr. Barr gave specific testimony of objective findings, from his examinations of Destin, that supported Destin's complaints. Dr. Barr testified that his review of the records of arthroscopic surgery performed on Destin after his accident, by a Dr. Zipper, revealed inflammatory changes in the lining on Destin's left knee. Dr. Barr also testified that he received a report from a Dr. Yost, an orthopedic physician, which report was consistent with his opinion of Destin's condition.

Dr. Barr testified that Dr. Yost attributed Destin's condition to his fall in the Sears' store. Dr. Barr further testified in regard to a report from a physical therapist which was consistent with his observations of Destin's problems. Additionally, numerous medical records relating to Destin's complaints and injuries were received in evidence.

The record further reflects that there is a strong difference of opinion between the medical profession and the chiropractic profession in regard to the value of thermography as a diagnostic tool. As shown by Dr. Miller's testimony, given in response to Sear's motion, there would have been much debate over the reliability of thermography and the lack of acceptance that it enjoys within the medical profession had Dr. Miller been allowed to testify at trial. Dr. Miller acknowledged that there are no li-

censing requirements for thermographers and he admitted that although thermography is generally accepted by the chiropractic profession, that it is otherwise a controversial subject.

Under the circumstances of the case at bar, Destin presented substantial evidence to support his complaints. Dr. Miller's testimony would have been cumulative to other evidence. Furthermore, considering the controversy in regard to the value of thermography as a diagnostic aid and the diversion of the jury's attention that would have ensued from a debate over the difference of opinion between the medical and chiropractic professions on the subject, it was not an abuse of discretion for the trial court to refuse to allow Dr. Miller's testimony.

If a decision of the trial court on the admission or exclusion of evidence is correct for any reason it will be affirmed. *Roach v. Consolidated Forwarding Company*, 665 S.W.2d 675, 682 (Mo.App.1984).

Based upon the record herein, the judgment of the trial court is affirmed.

All concur.

David S. Durbin, Appellate Defender, Anthony C. Cardarella, Asst. Appellate Defender, Kansas City, for appellant.

William L. Webster, Atty. Gen., Breck K. Burgess, Asst. Atty. Gen., Jefferson City, for respondent.

Before LOWENSTEIN, P.J., and SHANGLER and MANFORD, JJ.