**In re the Interest of L.J.M.S.,**
**A Female Juvenile.**

**No. 60056.**

Missouri Court of Appeals,
Eastern District,
Division Three.

Nov. 3, 1992.

Motion for Rehearing and/or Transfer to
Supreme Court Denied
Dec. 3, 1992.

Application to Transfer Denied
Jan. 26, 1993.

Lee R. Elliott, Troy, for appellant.

Leonard R. Cleavelin, St. Charles, Andrew Howard Koor, O'Fallon, for respondent.

STEPHAN, Judge.

N.E.P. ("Mother") appeals from the juvenile court's order of jurisdiction finding L.J.M.S. to be in need of the protection of the court, within the applicable provisions of § 211.031.1(1)(a), RSMo.Cum.Supp.1990, and placing L.J.M.S. in the legal and physical custody of the Missouri Division of Family Services ("DFS"), not to be returned to a parental home pending further review and order of the court. We affirm.

L.J.M.S. is the daughter of J.W.S. ("Father") and Mother. L.J.M.S. was born on November 7, 1975. In the spring of 1990, L.J.M.S. admitted to Mother that she had had sexual intercourse with her boyfriend. This revelation led to conflicts between L.J.M.S. and Mother. Eventually, Mother ordered L.J.M.S. not to see the boyfriend. As a result, a power struggle erupted between L.J.M.S. and Mother. These conflicts escalated to a point at which physical struggles took place between the two.

In August 1990, L.J.M.S. ran away from home. Twenty-four hours after leaving, Mother's mother (L.J.M.S.'s grandmother) ("Grandmother") called Mother from Independence, Missouri and told Mother that L.J.M.S. was at Grandmother's house. Mother instructed Grandmother to call the police to come and get L.J.M.S. The police came and took L.J.M.S. to the police station for questioning. The police then called Mother and asked for her permission to release L.J.M.S. into Grandmother's custody. Mother consented.

The following day, Grandmother brought L.J.M.S. back to Mother's house. Conflict continued between L.J.M.S. and Mother. Shortly after L.J.M.S. arrived home, Mother called L.J.M.S.'s social worker. The social worker allegedly told Mother that L.J.M.S. would have to have twenty-four hour adult supervision. Mother, therefore, arranged for L.J.M.S. to go to a babysitter's house, when Mother was not available to watch L.J.M.S.

On September 13, 1990, as L.J.M.S. was getting ready to go to school, Mother ordered her to come back into the house because she did not approve of the way L.J.M.S. was dressed. Someone reported this incident to the child abuse hotline that same day.

The following Monday, Jim Scott, a Child Abuse Investigator for DFS, and a police officer came to Mother's house. Scott told Mother that he knew that she and L.J.M.S. were having problems. He suggested that Mother place L.J.M.S. at Youth–In–Need for a cooling-off period. Youth–In–Need is a facility located in St. Charles, Missouri which provides temporary placement for children who cannot function at home. That afternoon, Mother called Youth–In–Need. She, however, was unable to talk to a counselor. She called again on September 18, 1990. Youth–In–Need told Mother that they could take L.J.M.S. the following day.

On September 19, 1990, Mother took L.J.M.S. to Youth–In–Need. L.J.M.S. was scheduled to be there for two weeks. However, on September 27, 1990, Youth–In–Need called Mother and told her that she would have to come and pick up L.J.M.S. because she was fighting with another resident. Youth–In–Need told Mother that L.J.M.S. was under a lot of stress and needed more help. The counselors suggested that Mother take L.J.M.S. to the Adolescent Psychiatric Unit of St. Joseph's Medical Center in St. Charles, Missouri ("St. Joseph's").

That evening, Mother took L.J.M.S. to St. Joseph's. Upon admission, L.J.M.S. expressed both suicidal and homicidal ideations. As a result, her physician, Dr. Jim F. Kerr ("Kerr"), put L.J.M.S. on close observation, meaning that hospital staff would have to observe L.J.M.S. every fifteen minutes. Moreover, L.J.M.S. was forbidden to leave the ward. Additionally, Kerr prescribed an anti-depressant, Norpramine.

On or about October 1, 1990, Kerr discussed L.J.M.S.'s hospitalization and treatment with Mother. The next day, he received a message which indicated that Mother intended to come to St. Joseph's and discharge L.J.M.S. Kerr, therefore, met with L.J.M.S. to find out how she felt about this new turn of events. Kerr knew L.J.M.S. was depressed and he wanted to know whether she was suicidal. L.J.M.S. steadfastly refused to go home. She told Kerr that if he forced her to go home, she would "do something". When Kerr asked L.J.M.S. what she meant by "do something", L.J.M.S. stated that she would either do something to Mother or to herself. Specifically, L.J.M.S. said she may run away or kill herself. Kerr took L.J.M.S.'s threats very seriously.

When Mother arrived at St. Joseph's to remove L.J.M.S., the hospital staff attempted to persuade Mother not to discharge L.J.M.S. Specifically, hospital staff told Mother both that L.J.M.S. was a suicide risk and that L.J.M.S. might attempt to hurt her. Mother responded that she could not watch L.J.M.S. twenty-four hours a day. Mother also stated that L.J.M.S. would have to be responsible for her own behavior and if something happens, it happens.

Given the state of affairs, on October 3, 1990, Kerr took twenty-four hour protective custody of L.J.M.S., pursuant to § 210.125.2, RSMo.1986 and Rule 111.01 a(3). On October 4, 1990, the juvenile court, apparently in response to a petition from the Juvenile Officer, verbally authorized continued temporary custody pending a protective custody hearing. The juvenile court followed this order up with a written order which it issued on October 10, 1990. In that order, the court found that L.J.M.S. came within the purview of § 211.031.-1(1)(a), RSMo.Cum.Supp.1990, by reason of

neglect. The trial court also found that L.J.M.S. was placed in protective custody due to imminent danger or an emergency and that there was probable cause to believe that L.J.M.S. was in need of the care and protection of the juvenile court. The juvenile court, therefore, placed temporary custody of L.J.M.S. with DFS, pending further order of the court.

The following day, the trial court held a protective custody hearing. At this hearing, Mother elected to waive her right to representation by counsel and she proceeded *pro se*. The juvenile court found that probable cause existed to believe that L.J.M.S. was without proper care, custody or support on or about October 3, 1990. The court further found that because of the emergency circumstances surrounding L.J.M.S.'s removal from her home, DFS could not have offered preventive services sufficient to retain L.J.M.S. in said home. Finally, the court found that it was necessary for L.J.M.S. to remain in protective custody to prevent harm to L.J.M.S. pending adjudication of the Juvenile Officer's petition. The trial court reaffirmed its decision that, pending adjudication of the Juvenile Officer's petition, L.J.M.S. would be placed in the temporary custody of DFS.

On October 30, 1990, Mother filed a motion for rehearing regarding the detention issue. In support of her motion, Mother stated that she caused L.J.M.S. to be admitted to St. Joseph's on September 27, 1990. She further stated that she sought to remove L.J.M.S. from that hospital and the treating physician when she discovered that L.J.M.S.: (1) was being treated with Norpramine; and (2) was not having her vital signs monitored in contravention of the "Warnings" and "Contraindications" sections of the latest edition of the Physician's Desk Reference. Mother further alleged that she would have caused L.J.M.S. to be admitted to Weldon Springs Hospital or the DePaul Hospital Children's Stress Unit. The Juvenile Officer opposed Mother's motion.

On November 8, 1990, the juvenile court set Mother's motion for rehearing for February 21, 1991. The court, further, resolved the motion for rehearing by approving a stipulation entered into between L.J.M.S. and Mother. Pursuant to the stipulation, L.J.M.S. and Mother agreed to participate in individual and family counseling through the Four County Mental Health Services. Specifically, L.J.M.S. and Mother agreed to weekly individual therapy sessions and joint sessions as soon as the therapist felt it was practicable. The stipulation specified that therapy sessions were at Mother's expense. Moreover, the stipulation specified that L.J.M.S. would be encouraged to allow supervised visits with Mother.

On February 21 and 22, 1991, the juvenile court held a jurisdictional hearing. At some point, Mother requested both a change of judge and a change of venue. The juvenile court denied these requests. On February 22, 1991, the juvenile court judge entered his order of jurisdiction. The court found that L.J.M.S. is in need of the protection of the court and is within the applicable provisions of § 211.031.1(1)(a), RSMo.Cum.Supp.1990, in that Mother, who is legally responsible for the care, custody and support of L.J.M.S. failed to provide proper care, custody and support for her. Specifically, the court found that Mother neglected L.J.M.S.'s well-being and welfare by attempting to remove L.J.M.S. from St. Joseph's. The court further found that DFS had made reasonable efforts to reunify the family and eliminate the need for alternative care, specifically by providing individual counseling since January 1991 and provided weekly visitation which was exercised twice. Finally, the court found that L.J.M.S. is in need of care and treatment which cannot be furnished by placing L.J.M.S. in her home, but which requires the care, custody and services of DFS and alternative placement. The court, therefore, ordered L.J.M.S.'s legal and physical custody be placed with DFS with the discretion to place her in alternative care. The court specified that L.J.M.S. is not to be returned to a parental home until further review and order of the court. Mother currently appeals. We will recite additional facts, as necessary, throughout the remainder of this opinion.

■ Mother's first point is that the trial court lacked jurisdiction to order L.J.M.S. into the custody of DFS and to prohibit L.J.M.S.'s placement in a parental home. Mother argues that the Juvenile Officer alleged that L.J.M.S. was in need of the care and treatment of the court in that on October 3, 1990, Mother, who is legally responsible for L.J.M.S.'s care, custody and support, did neglect L.J.M.S.'s well-being and welfare by attempting to remove L.J.M.S. from St. Joseph's against medical advice, thereby putting L.J.M.S. in imminent physical danger. Mother argues that these allegations, however, are insufficient in that they do not inform Mother *why* attempting to remove the child from the care unit against medical advice presented imminent physical injury to L.J.M.S.

■ This court must sustain the trial court's decision unless there is no substantial evidence to support its judgment, it is against the weight of the evidence, or it erroneously declares or applies the law. *In Interest of W.D.T.*, 785 S.W.2d 286, 287 (Mo.App.1990). The trial court is accorded deference regarding resolution of fact issues and the credibility of witnesses. *Id.* This court will reverse the judgment only when it is of the firm belief that the judgment is wrong. *Id.*

Section 211.091, RSMo.Cum.Supp.1990, provides:

**Petition in juvenile court-contents.–1.** The petition shall be entitled "In the interest of . . . . . . . . . ., a child under seventeen years of age". If a petition is filed pursuant to the provisions of subdivision (1) of subsection 1 of section 211.031, the petition shall be entitled "In the interest of . . . . . . . . . ., a child under seventeen years of age" or "In the interest of . . . . . . . . . ., a person seventeen years of age".

2. The petition shall set forth plainly:

(1) The facts which bring the child or person seventeen years of age within the jurisdiction of the court;

(2) The full name, birth date, and residence of the child or person seventeen years of age;

(3) The names and residences of his parents, if living;

(4) The name and residence of his legal guardian if there be one, of the person having custody of the child or person seventeen years of age or of the nearest known relative if no parent or guardian can be found; and

(5) Any other pertinent data or information.

3. If any facts required in subsection 2 of this section are not known by the petitioner, the petition shall so state.

Rule 114.01b(3) specifies more clearly than does § 211.091, RSMo.Cum.Supp.1990, that a petition in a juvenile proceeding: "shall set forth plainly and concisely, with reasonable particularity . . . facts which bring the juvenile within the jurisdiction of the juvenile court, including the date, place and manner of acts alleged and the law or standard of conduct, if any, allegedly violated by the acts."

In *Matter of Trapp*, 593 S.W.2d 193 (Mo. banc 1980), the Supreme Court addressed the issue of whether a neglect petition, under § 211.031.1(1), RSMo.1978, was sufficient to vest the juvenile court with jurisdiction to enter custody orders. The court held that it was. In reaching its decision, the court addressed the question of whether the petition satisfied the notice requirements of due process. The court stated the notice required is that "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Id.* at 198–199.

Applying this test, we find that the petition served on Mother was adequate to notify her of the pending action. The petition made clear that the charges against which Mother would need to defend were that on or about October 3, 1990, Mother, who is legally responsible for the care, custody and support of L.J.M.S. neglected L.J.M.S.'s general well-being and welfare by attempting to remove L.J.M.S. from St. Joseph's against medical advice thereby putting L.J.M.S. in imminent physical danger. Mother's claim that the petition must

allege more facts, including how or in what way or from what source the physical danger was imminent and why such attempted removal was against medical advice is without merit. If Mother was truly confused about any matter contained in the petition, Rule 55.27(d) affords her a remedy. Under that Rule, Mother could have moved for a more definite statement of any matter contained in the pleading which is not averred with sufficient definiteness or particularity to enable her properly to prepare her for trial. Since the neglect petition stated facts sufficient to vest the juvenile court with jurisdiction to act, Mother's first point is denied.

■ Mother's second point also contends that the trial court lacked jurisdiction to order L.J.M.S. into DFS's custody and to prohibit L.J.M.S.'s placement into a parental home. In her second point, Mother raises two arguments in support of this claim. First, she argues that the allegation that she had committed medical neglect in attempting to remove L.J.M.S. from St. Joseph's was not supported by legally sufficient evidence. Second, she contends that an inquiry into her reasons for her actions would have revealed that her conduct could not support a case of medical neglect.

■ Section 211.031.1(1)(a), RSMo. Cum.Supp.1990, provides in part that the juvenile court shall have exclusive original jurisdiction in proceedings involving any child alleged to be in need of care and treatment because the parents or other persons legally responsible for the care and support of the child have neglected or refused to provide proper medical, surgical or other care necessary for his well-being. This section permits the prevention of social, physical, and psychological deterioration of children. *In Interest of J.M.P.*, 669 S.W.2d 298, 299 (Mo.App.1984). To assert jurisdiction under § 211.031.1(1)(a), RSMo. Cum.Supp.1990, the juvenile court must find clear and convincing evidence that the child is in need of care and that this need has arisen because the parent has neglected to provide the care necessary for the child's well-being. *Id.* In reviewing the sufficiency of the evidence, this court considers the evidence, and all reasonable inferences which may be drawn therefrom, in the light most favorable to the trial court's judgment. *In Interest of W.D.T.*, 785 S.W.2d 286, 287 (Mo.App.1990).

Upon L.J.M.S.'s admission to St. Joseph's, L.J.M.S. expressed both suicidal and homicidal ideations. Dr. Kerr, therefore, placed her on close observation. When Kerr met with L.J.M.S. to find out how she felt about Mother coming to St. Joseph's to discharge her, L.J.M.S. steadfastly refused to go home. She told Kerr that if he forced her to go home, she would "do something", meaning that she would either do something to Mother or to herself. L.J.M.S. specifically stated that she may attempt suicide. Kerr determined that L.J.M.S. was in imminent danger of committing suicide, a determination in which her treatment team concurred.

When Mother arrived at St. Joseph's to remove L.J.M.S., the hospital staff attempted to persuade her not to discharge L.J.M.S. The hospital staff told Mother both that L.J.M.S. was a suicide risk and that L.J.M.S. may attempt to hurt her. Mother responded that she could not watch L.J.M.S. twenty-four hours a day. Mother also stated that L.J.M.S. would have to be responsible for her own behavior and, if something happens, it happens. Mother, herself, admitted that she never told the hospital staff of her purported intention to find another placement for L.J.M.S.

The overwhelming weight of the evidence established that L.J.M.S. was in need of continued psychiatric treatment and that she was in imminent danger of committing suicide or harming Mother if she were forced to return to Mother's home. By attempting to remove L.J.M.S. from St. Joseph's, Mother neglected L.J.M.S. by refusing to provide medical care that was necessary for L.J.M.S.'s well-being. Thus, the trial court neither lacked jurisdiction to order L.J.M.S. into DFS's custody nor did it base its decision on insufficient evidence. Mother's second point is, therefore, denied.

■ Mother's third point is that the trial court's jurisdiction order was defective in that it did not include findings of why

further efforts could or could not have prevented or shortened the family's separation. Specifically, Mother argues that § 211.183.3, RSMo.Cum.Supp.1990, requires the juvenile court to enter findings of what preventive or reunification efforts DFS made and why further efforts could or could not have prevented or shortened the separation of the parties.

Section 211.183, RSMo.Cum.Supp.1990, provides:

**Order of disposition to include determination of efforts of division of family services—definition of reasonable efforts by division.**—1. In juvenile court proceedings regarding the removal of a child from his home, the order of disposition shall include a determination of whether the division of family services has made reasonable efforts to prevent or eliminate the need for removal of the child and, after removal, to make it possible for the child to return home. If the first contact with the family occurred during an emergency in which the child could not safely remain at home even with reasonable in-home services, the division shall be deemed to have made reasonable efforts to prevent or eliminate the need for removal.

2. "Reasonable efforts" means the exercise of reasonable diligence and care by the division to utilize all available services related to meeting the needs of the juvenile and the family.

3. In support of its determination of whether reasonable efforts have been made, the court shall enter findings, including a brief description of what preventive or reunification efforts were made and why further efforts could or could not have prevented or shortened the separation of the family. The division shall have the burden of demonstrating reasonable efforts.

4. The juvenile court may authorize the removal of the child even if the preventive and reunification efforts of the division have not been reasonable, but further efforts could not permit the child to remain at home.

5. Before a child may be removed from the parent, guardian, or custodian of the child by order of a juvenile court, excluding commitments to the division of youth services, the court shall in its orders:

(1) State whether removal of the child is necessary to protect the child and the reasons therefor;

(2) Describe the services available to the family before removal of the child, including in-home services;

(3) Describe the efforts made to provide those services relevant to the needs of the family before the removal of the child;

(4) State why efforts made to provide family services described did not prevent removal of the child; and

(5) State whether efforts made to prevent removal of the child were reasonable, based upon the needs of the family and child.

Neither party cited, nor could we find, a case which addresses the issue of whether § 211.183, RSMo.Cum.Supp.1990 applies equally to orders of jurisdiction as well as to orders of disposition. Mother relies on *In Interest of A.L.W.*, 773 S.W.2d 129 (Mo. App.1989). In that case, the mother appealed from an order of disposition, which undertook to remove her four children from her custody, claiming the order was defective in that it neglected to articulate findings required by § 211.183, RSMo.Cum. Supp.1988. Our brethren in the Western District set aside the orders and remanded the cause on the basis that the juvenile court failed to determine whether or not DFS made reasonable efforts to avoid the need to remove each child from the home, what the reasonable efforts were, and a summary of the evidence detailing those efforts. The court further found that the juvenile court's recital that reasonable efforts were made did not rest on substantial evidence and hence disposition must be set aside. This case is not applicable here, however, for it addresses an order of disposition, not an order of jurisdiction as in the case at bar.

We now hold that § 211.183 applies only to orders of disposition. This holding is not only applicable to subsections one through four, but also to subsection five. Although subsection 5, which was added by a 1987 amendment, is ambiguous as to whether it applies to orders other than orders of disposition, in construing statutes, our primary responsibility is to ascertain the General Assembly's intent from the language used and to give effect to that intent. *Com.Fed.Sav. & Loan v. Director of Rev.*, 752 S.W.2d 794, 798 (Mo. banc 1988). In determining legislative intent, the court must first consider the language of the statute and words employed in their plain and ordinary meaning. *Id.* Provisions of the entire legislative act must be construed together and if reasonably possible all provisions must be harmonized. *Id.* Thus, by reading all provisions of § 211.183, RSMo.Cum.Supp.1990, together, it is clear that subsection five only requires mandated findings in orders of disposition. Mother's third point is, therefore, denied.

Mother's fourth point is that the jurisdiction order, in which the juvenile court found that DFS had made reasonable efforts to reunify the family and eliminate the need for alternative care, specifically providing for individual counseling since January 1991 and providing weekly visitation which was exercised two times, was not supported by sufficient competent evidence. As we have previously stated, § 211.183, RSMo.Cum.Supp.1990, applies solely to orders of disposition, not to orders of jurisdiction. The juvenile court was, therefore, not required to make any findings mandated by § 211.183, RSMo.Cum.Supp.1990; and we decline Mother's invitation to decide whether the juvenile court's findings were supported by sufficient competent evidence. For, regardless of what evidentiary support there was for the findings, the court properly exercised its jurisdiction. Mother's fourth point is, therefore, denied.

Mother's fifth point is that the trial court erred in precluding her from inquiring of DFS's caseworker what efforts DFS had been made to prevent or eliminate the need for L.J.M.S.'s removal from the home and to prevent or shorten the family's separation. Again, Mother's point is predicated on the belief that the court has a duty to make such findings pursuant to § 211.183, RSMo.Cum.Supp.1990. However, that section, as previously stated, does not require the trial court to enter findings regarding DFS's efforts to prevent or eliminate the need for removal of the child in orders of jurisdiction. Thus, Mother's inquiries into what efforts DFS had made were irrelevant. The trial court, therefore, properly sustained the objections to such evidence.

Mother's sixth point is that the trial court abused its discretion in refusing to permit her to question L.J.M.S. in open court and in not permitting her to submit questions to L.J.M.S. during or after the trial court's *in camera* examination of L.J.M.S. At the outset, we note that when Mother announced that she wanted to call L.J.M.S. to the stand, the guardian ad litem objected to having L.J.M.S. testify in open court. He stated:

> [t]his proceeding is wreaking havoc on the family in the first place. I think to further that by having her to express her feelings in open court isn't going to be beneficial to the family unit. What I would suggest and I was going to call.... An in camera interview by the Judge of the child. If the Court would see fit to do that, I think that would at least assist in preserving the family and keeping their hopes for reunification. I think any more than that would do more harm than good.

The court noted that it had observed L.J.M.S. throughout the course of the hearing and that she had at various times become quite upset because of the testimony that she was hearing. The court, thereafter, found that it was not in L.J.M.S.'s best interest to be compelled to testify in open court. The court, therefore, granted the guardian ad litem's request: that L.J.M.S. be interviewed in a closed setting with counsel present but with the natural mother and father excluded.

The court's conduct of its examination was well within its discretion to control the process of a trial. Rule 117.01(d) provides:

"[i]n any hearing the court may in its discretion exclude the juvenile's custodian from any part of the hearing where it appears that exclusion is in the best interests of the juvenile."

■ Moreover, we give substantial deference to the trial court regarding the admissibility of evidence. *Oldaker v. Peters*, 817 S.W.2d 245, 250 (Mo. banc 1991). We will not disturb its decision absent a showing of abuse of discretion. *Id.* The general rule is that appellate courts will not review excluded evidence without a specific and definite offer of proof. *Destin v. Sears, Roebuck and Co.*, 803 S.W.2d 113, 116 (Mo.App.1990). The exception is very narrow and involves a three prong test. *Id.* First, there must be a complete understanding based on the record of what the excluded testimony would have been. *Id.* Second, the objection must be to a specific category of evidence rather than to specific testimony. *Id.* Third, the record must reveal that the evidence would have helped its proponent. *Id.* A narrative offer of proof may occasionally be adequate, if it is presented with certainty and detail sufficient to demonstrate its quality as relevant, material and probative. *Sch. Dist. Of Independence v. U.S. Gypsum*, 750 S.W.2d 442, 453 (Mo.App.1988).

As previously stated, after Mother testified, Mother's attorney again asked leave to call L.J.M.S. as a witness. In support of this request, Mother's attorney made an "offer of proof". It did not specifically state what testimony he expected to elicit from L.J.M.S. The Juvenile Officer, therefore, objected. Mother's counsel responded with a second "offer of proof", stating that he would like to inquire about whether: (1) one of the reasons that L.J.M.S. was afraid to go home was because of threats by students at her school; (2) Mother had stated that she was going to sign L.J.M.S. away in connection with a disciplinary threat for L.J.M.S. not to see her boyfriend; and (3) her father had rejected her. Mother's counsel's "offers of proof" fail the *Destin* test in two respects. First, there is no complete understanding of what the excluded testimony would have been. Second, the record does not reveal that any of the excluded testimony would have

helped Mother. The record is replete with evidence that L.J.M.S. has expressed both suicidal and homicidal ideations. It is also replete with evidence that Mother neglected L.J.M.S. by attempting to remove L.J.M.S. from St. Joseph's when L.J.M.S. required further medical care. Quite simply, Mother's "offers of proofs" were not certain nor do they provide detail sufficient to demonstrate its quality as relevant, material and probative.

For these reasons, we are unable to conclude that the trial court erred. The juvenile code permits action to prevent the deterioration of a child's situation. *In Interest of E.J.*, 741 S.W.2d 892, 894 (Mo.App.1987). Our primary concern is the welfare of the child. *Id.* Excluding Mother from the *in camera* hearing was in L.J.M.S.'s best interest, for it prevented further deterioration of an already troubled family situation.

The trial court's judgment is, therefore, affirmed. The Juvenile Officer's motion for dismissal and damages for filing a frivolous appeal is denied.

PUDLOWSKI, P.J., and CRIST, J., concur.