Debra Graves ENLOW,
Plaintiff–Respondent,

v.

FIRE PROTECTION SYSTEMS, INC.
and Anna Marie Enlow,
Defendants–Appellants.

No. 57776.

Missouri Court of Appeals,
Eastern District,
Division Three.

Jan. 22, 1991.

David Alan Horwitz, Louis S. Czech, Clayton, for defendants-appellants.

Eric Taylor, Mitchell Jacobs, Elliott I. Goldberger, Daniel M. Roddy, St. Louis, for plaintiff-respondent.

STEPHAN, Judge.

This is an appeal from a judgment in a court-tried case. Respondent, Debra Graves Enlow, brought this action to recover benefits as the surviving spouse of Michael Enlow. Appellant, Anna Marie Enlow, was Michael's mother. She and Michael's employer, Fire Protection Systems, Inc., argued that Anna Marie Enlow was the designated beneficiary under the Fire Protection Systems, Inc. Employees Retirement Plan (the "Plan"). They further argued that respondent was not legally married to the deceased, or, in the alternative, they had not been married for the one year period required by the Plan. The trial court found that the marriage was valid and that respondent automatically became Michael's beneficiary at the time they married. From this judgment appellants brought their appeal.

Michael was a full-time employee of Fire Protection Systems, Inc. As a result of his employment he was eligible to participate in the Plan. At the time of his death, Michael was fully vested and entitled to benefits totalling $21,988.93. On August 4, 1981, Michael designated his mother as his beneficiary on a form provided by the Plan for that purpose.

On July 4, 1988 Michael and respondent were married, before witnesses, in Montego Bay, in the Country of the Island of Jamaica. On August 20, 1988, and while still in the employ of Fire Protection Systems, Michael was killed in a motorcycle accident.

Respondent made a claim for benefits with Fire Protection Systems. She told them that she was entitled to the death benefits provided by the Plan because she was Michael's surviving spouse. When payment was not forthcoming, respondent filed suit in St. Louis County. Her first petition was subsequently amended. Appellants answered and alleged that Anna Marie Enlow was the designated beneficiary under the Plan, and she was entitled to the death benefits.

Respondent's evidence showed that she and Michael were married on July 4, 1988 at Montego Bay, Jamaica. She testified that they both signed a marriage register and that the ceremony was performed before witnesses and a minister. She further testified that she and Michael lived together as husband and wife. Witnesses of the wedding ceremony also testified at trial.

Appellants produced the testimony of an expert witness, Joseph Tolan, who worked for Compensation Management, Inc., the Administrator of the Plan. Mr. Tolan testified that Anna Marie Enlow was the decedent's beneficiary pursuant to the designation form on file, and, according to the terms of the Plan, the marriage did not automatically change the designated beneficiary because of its short duration. Other facts will be adduced as they become necessary.

Our standard of review in this court-tried action is pursuant to the oft cited rule in *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976). We will not reverse the trial court's judgment unless there is no substantial evidence to support it, unless it is against the weight of the evidence or unless it erroneously applies the law. *Id.* at 32.

■ We first consider a motion taken with the case. Appellants' legal file includes a document entitled "To Whom It May Concern" which sets out the procedures one must follow in order to obtain a valid marriage in the Country of the Island of Jamaica. Respondent filed a motion to

strike this document because it was not before the trial court.

We reviewed the entire record including the transcript and were unable to find any reference to this document. It was not filed as an exhibit at trial. Appellants did not reply to respondent's motion so there is no indication of when or where the trial court might have considered it. We, therefore, agree with respondent and order that the document be stricken from the record on appeal.

In their first point, appellants allege that the trial court erred in finding the marriage between respondent and Michael was valid. This argument was not contained in appellants' answers or counterclaims. It was, however, contained in the motion for new trial and, apparently, was considered by the trial court. We may review the argument.

■ Appellants' arguments are predicated on the fact that respondent was attempting to prove a common law marriage. Pursuant to statute, common law marriages are null and void in the State of Missouri. Section 451.040.5, RSMo 1986. The policy behind this legislative declaration is to require some amount of solemnity and reliability in establishing the marriage of those domiciled in and residing in Missouri. *Hesington v. Estate of Hesington,* 640 S.W.2d 824, 827 (Mo.App.1982). Missouri will not recognize a common law marriage between Missouri residents even if the marriage occurs in a state which recognizes common law marriage. *Stein v. Stein,* 641 S.W.2d 856, 857 (Mo.App.1982).

Appellants have correctly stated the law governing common law marriage in this state. We hold, however, that the evidence supported the trial court's finding of a ceremonial marriage, not a common law marriage.

■ It is the public policy of this state to allow the fact of marriage to be proven by evidence of cohabitation and general repute, and by the declarations and conduct of the parties. *In re Estate of Tomlinson,* 493 S.W.2d 402, 403 (Mo.App.1973). Such *evidence constitutes* primary, strong and convincing proof of marriage and, if not

rebutted, creates a presumption of marriage. *Id.* The burden of proving the invalidity of a marriage rests upon the party asserting the invalidity, and a marriage will not be declared invalid except upon clear, cogent and convincing evidence. *In re Marriage of Burnside,* 777 S.W.2d 660, 664 (Mo.App.1989).

Respondent's evidence indicated that a ceremonial marriage took place in Montego Bay, Jamaica, on July 4, 1988. She testified that she and Michael signed a marriage register and that a ceremony was performed by a minister, before witnesses. One of the witnesses, Mack Clay, testified that he was present at the ceremony and that he signed the marriage register as a witness. He further testified that he spent time with the couple in Jamaica after the ceremony and that, during this time, they generally presented themselves as newlyweds.

After returning to St. Louis, respondent and Michael lived together as husband and wife. They opened a joint checking account in the names of Michael T. or Debra J. Enlow. Michael sent respondent an anniversary card one month after the wedding. Various exhibits were presented at trial which named respondent as Michael's surviving spouse. These included the obituary notices in the *St. Louis Post–Dispatch,* and the *County–Star Journal,* and the death certificate.

■ The fact of a marriage may be proved by direct, circumstantial or presumptive evidence and by documentary or parol evidence. *Thomson v. Thomson,* 236 Mo.App. 1223, 163 S.W.2d 792, 796 (1942). Direct testimony of one of the parties may serve as proof of the existence of marriage. *Vanderson v. Vanderson,* 668 S.W.2d 167, 171 (Mo.App.1984).

Appellants argue that the copy of the marriage register, which came from Jamaica, contained errors. This, in and of itself, is insufficient to overcome the presumption of marriage. *See, Thomson,* 163 S.W.2d at 796. It would hardly be prudent to require that a marriage could only be proved by the issuance of a document. To do so could make it nearly impossible for some couples

to prove the legality of their marriage. *Tomlinson*, 493 S.W.2d at 405.

Appellants did not present any evidence which would rise to the level of clear, cogent and convincing. There is strong circumstantial, presumptive, and parol evidence supporting the fact of a marriage between respondent and Michael. The trial court did not err in finding a valid marriage. Point I is denied.

In their second point, appellants argue that the trial court erred in finding that the respondent was automatically entitled to Michael's death benefits. They argue that the Plan and federal law both require that a spouse be married to the participant for a one year period. Respondent argues that, even though Anna Marie was designated beneficiary, the terms of the Plan and the terms of the beneficiary designation provide that a spouse is automatically designated beneficiary upon marriage.

Neither party saw fit to brief the question of federal preemption: whether the Plan was governed by the exclusive provisions of the Employee Retirement Income Security Act (ERISA) 29 U.S.C. § 1001, *et seq*, although both sides agree that the Plan is within the scope of ERISA. As the question addresses our subject matter jurisdiction, we decide it *sua sponte*.

ERISA was established to "protect ... the interests of participants in employee benefit plans and their beneficiaries, by requiring the disclosure and reporting to participants and beneficiaries of financial and other information with respect thereto, by establishing standards of conduct, responsibility, and obligation for fiduciaries of employee benefit plans, and by providing for appropriate remedies, sanctions, and ready access to the Federal courts." 29 U.S.C. § 1001(b). Congress also provided that ERISA should have a preemptive ef-

fect, by providing, "[e]xcept as provided in subsection (b) of this section, the provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title." 29 U.S.C. § 1144(a).[1]

The Supreme Court has noted that the phrase "relate to" was intended by Congress to have a broad common sense meaning. *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 107 S.Ct. 1549, 1553, 95 L.Ed.2d 39 (1987). A state law, therefore, "relates to an employee benefit plan ... if it has a connection with or reference to such a plan." *Shaw v. Delta Airlines, Inc.*, 463 U.S. 85, 103 S.Ct. 2890, 2900, 77 L.Ed.2d 490 (1983). "State law" is defined as, "all laws, decisions, rules, regulations, or other State action having the effect of law, of any State." 29 U.S.C. § 1144(c)(1).

■ Respondent's claims were for denial of benefits or improper processing of her claim for benefits, all state common law actions. As stated they are preempted by ERISA unless they fall under an exception. We, therefore, look to the civil enforcement provision, 29 U.S.C. § 1132(a)(1)(B), which states:

A civil action may be brought—

(1) by a participant or beneficiary—

(B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan.

"State courts of competent jurisdiction and district courts of the United States shall have concurrent jurisdiction of actions under (a)(1)(B) of this section." 29 U.S.C. § 1132(e)(1).

---

**1.** There are exceptions to this broad preemption provision: 29 U.S.C. § 1144(b)(2)(A) provides that ERISA does not preempt any person from state law regulating insurance, banking or securities [the savings clause], and 29 U.S.C. § 1144(b)(2)(B) qualifies the savings clause by making clear that a state law that purports to regulate insurance cannot deem an employee benefit plan to be an insurance company [the deemer clause]. *See, Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 107 S.Ct. 1549, 1552, 95 L.Ed.2d 39 (1987). We find that neither of these qualifying provisions is relevant to the facts of this case. For a comprehensive discussion of the savings clause and the deemer clause, *see, St. Louis Children's Hospital v. Commerce Bancshares*, 799 S.W.2d 87, 90–91 (Mo.App., 1990).

The ERISA civil enforcement section provides for a comprehensive scheme which indicates that Congress "did *not* intend to authorize other remedies that it simply forgot to incorporate expressly." *Pilot Life,* 107 S.Ct. at 1556, quoting *Massachusetts Mutual Life Ins. Co. v. Russell,* 473 U.S. 134, 105 S.Ct. 3085, 3092, 87 L.Ed.2d 96 (1985). (emphasis in original). The deliberate care Congress took when drafting 29 U.S.C. § 1132(a)(1)(B) also indicates that the remedies were intended to be exclusive.

The trial court's judgment does not specifically rule on respondent's state common law actions as set out in her petition. The trial judge, instead, interpreted the plain meaning of the Plan without reference to Missouri law. As such, we have jurisdiction pursuant to 29 U.S.C. § 1132(e)(1). *See also, St. Louis Children's Hospital v. Commerce Bancshares,* 799 S.W.2d 87 at 93–94 (Mo.App.1990).

While it is true that we give deference to the findings of fact in a court-tried case, we also make an independent evaluation of the conclusions of law the trial court draws from the facts. *Bradley v. Mullenix,* 763 S.W.2d 272, 275 (Mo.App.1988). Appellants argue that Anna Marie Enlow was designated Michael's beneficiary under the Plan in 1981, and that certain changes have occurred in ERISA which affect the outcome of this case. Specifically, they point to 29 U.S.C. § 1055(b)(4) which allows that:

[a] plan shall not be treated as failing to meet the requirements of paragraph (1)(C) or (2) merely because the plan provides that benefits will not be payable to the surviving spouse of the participant unless the participant and such spouse had been married throughout the 1–year period ending on the earlier of the participant's annuity starting date or the date of the participant's death.

The sections of the Plan which are pertinent here are as follows:

*Section 6.01(b)—Automatic Methods of Distribution*

The automatic form of death benefit for a married participant is a survivor annuity contract payable to the Participant's surviving spouse unless the participant's spouse has consented in writing for the benefit to be paid to someone else. If there is no surviving spouse on the date of his death, then such distribution shall be made to such participant's estate in the form of one of the alternative methods below as elected by the Plan Administrator; provided, however, the Qualified Joint and Survivor Form may not be elected by the Plan Administrator.

*Section 6.03—Election Procedures* (In pertinent part)

The Participant's or Beneficiary's election shall be in writing and the Plan Administrator may require the Participant or Beneficiary to execute any necessary documents as to the provisions to be made. The Participant's written election shall include both his and his spouse's written election not to have benefits payable in a form having the effect of a qualified joint and survivor annuity within the meaning of 401(a)(11) of the Code if:

(b) the Participant

(1) names a Beneficiary other than his spouse or elects a method of distribution other than a life annuity with installment refund for death benefits payable under this Plan, and

(2) has a spouse to whom he has been married for a one year period.

*Section 10.06—Beneficiary* (In pertinent part)

Each Participant may name a Beneficiary to receive any death benefit (other than income payable to a contingent annuitant) which may arise out of his participation in the Plan. He may change his Beneficiary from time to time without the Beneficiary's consent. However, a married Participant will only be able to designate his or her spouse as Beneficiary unless the spouse consents to the designation of the different Beneficiary. It is the responsibility of the Participant to give written notice to the Trustee of the name of his Beneficiary on a form furnished for that purpose.

Respondent also cites us to the 1981 designation form which, she claims, makes it

clear to a participant that his spouse is automatically designated as his beneficiary. This exhibit was not provided and we will not base our decision on it.

■ The trial judge found that section 6.03 applies only when a participant desires to elect benefits other than a joint and survivor annuity and (i) has named a beneficiary other than his spouse, and (ii) has a spouse to whom he has been married for at least one year. He further found that, when the Plan is read in its entirety, it is reasonable to conclude that a participant's spouse is, automatically, his designated beneficiary. He concluded by stating that the requirement of a marriage of at least one year's duration affects only the election of benefits, not the designation of beneficiaries.

Appellants argue that section 6.03 of the Plan was drafted to comply with 29 U.S.C. § 1055(b)(4), *supra,* which allows a plan to preclude the spouse from becoming an automatic beneficiary during the first year of marriage. Appellants presented the testimony of an expert, Joseph Tolan, who stated that the one year requirement contained in section 6.03(b) also applied to beneficiary designations. Mr. Tolan also testified, however, that there was no language in the "summary plan description" which would give a participant any indication that the participant's spouse would not automatically become his beneficiary. He explained that ERISA requires that all plans use a "summary plan description" to advise their participants, in plain language, of the terms and conditions of the Plan.

Based on the testimony and evidence adduced at trial we find appellants' arguments unconvincing. Logically, if the Plan were designed to prohibit spouses married under one year from automatic designation as beneficiary, the provision would have been more appropriately placed in section 6.01 and/or section 10.06, *supra.* The federal law appellants rely on, 29 U.S.C. § 1055(b)(4), does not *impose* a one year marriage provision, it merely gives the Plan an option to use a one year provision without voiding the Plan.

There is no case law on this particular point. We reach our conclusion based on a careful reading of the Plan and other evidence and testimony before the trial court. We are not persuaded that the Plan intended to exclude spouses not yet married a year from automatic designation. Moreover, there was evidence before the court that decedent intended for his wife to be his beneficiary. We, therefore, agree with the trial court and find that the Plan is not specific regarding the one year marriage rule's effect on beneficiary designations. Point II is denied.

The judgment of the trial court is affirmed.

REINHARD, P.J., and CRANE, J., concur.