In re **ESTATE OF CARROLL**,
**Joseph Brandon, Plaintiff.**

**CARROLL, Joseph Brandon II &**
**C.S.V. Carroll, Respondents,**

**Sutton, Randall K., Personal Rep. of**
**Estate, Intervenor–Respondent,**

v.

**CONTINENTAL CASUALTY**
**COMPANY, Appellant.**

**No. WD 46096.**

Missouri Court of Appeals,
Western District.

June 1, 1993.

Craig A. Strayer, Kansas City, for Carroll.

Kriston Altice, Kansas City, for Continental Cas.

Jean Ryan, Springfield, for Sutton.

Before BRECKENRIDGE, P.J., and SHANGLER and SPINDEN, JJ.

SHANGLER, Judge.

The plaintiffs Joseph Brandon Carroll II and Christian Sheppard Victor Carroll brought suit to recover accidental death benefits under a policy issued to their father, Joseph Brandon Carroll by the defendant Continental Casualty Company. The father died from injuries suffered in an airplane crash near a private landing strip. It was admitted that the policy was in full force in effect when Carroll suffered fatal injury by accidental means.

The insured Carroll was employed by Litton Industries as a chemical engineer. During his employment, Carroll purchased Group Accidental Death and Dismemberment Insurance coverage in the amount of $350,000 from the defendant Continental Casualty. The policy named the sons, Joseph Carroll II and Christian Carroll, as the beneficiaries each of $150,000 in accidental death benefits, and his friend, Carolyn Sue Brashers, as the beneficiary of $50,000. Randall K. Sutton, personal representative of the estate of Joseph B. Carroll, intervened to recover accidental death benefits left to Carolyn Brashers, who died simultaneously with him in the plane crash.

On April 12, 1987, a single engine, 1978 model Lake LA–4–200 Buccaneer crashed on a private landing strip near Nixa, Missouri. Two people were found in the plane, still strapped to their seats. Carroll was found in the left seat and Ms. Brashers was in the right seat. They were both pronounced dead at the scene by the county coroner. There were no eyewitnesses to the crash. The Buccaneer, a dual control amphibious plane, was owned by Carroll and was capable of being piloted from either the left hand or the right hand seat.

Carroll and Brashers were both capable of flying the airplane. Carroll had a pilot's license, but his log book reflected that he was not current and so could not operate an aircraft and be in compliance with FAA regulations. Brashers had held a student pilot certificate from 1982 to 1984 which had expired.

The airstrip where the crash occurred is located on a farm owned by Steve E. Moore. Moore was himself a licensed pilot. He had known Carroll for many years and also had known Ms. Brashers as an acquaintance. Moore testified that it is not possible to tell from the outside of the airplane who is flying the craft if both right and left seats are occupied by persons who know how to fly.

Although there were no eye-witnesses to the casualty, Moore saw the Buccaneer immediately before it crashed. He saw the plane flying to the landing strip, but did not see the craft thereafter until he arrived at the scene of the crash. He found the Buccaneer there upside down. Moore flipped the plane over and found Carroll strapped in the left seat and Brashers strapped in the right seat. Apparently, the plane had collided with a tree near the landing strip and crashed into the ground.

The insurance policy issued by Continental had a provision, "Limited Air Travel Coverage." That provision was deleted and was substituted by Rider # 1:

It is agreed and understood that Part II Limited Air Travel Coverage is deleted in its entirety and the following substituted therefore. [Sic]

Insurance provided under this policy includes riding as a passenger and not as a pilot or crew member in, including boarding and alighting from, any aircraft being used for the transportation of passengers.

In addition, Rider # 3 contained an Exclusions provision that read:

PART VI This policy does not cover any loss to an Insured Person caused by or resulting from:

(1) injury sustained in consequence of riding as a pilot or crew member in any aircraft;

(2) riding in any aircraft not being used for the transportation of passengers; [1]

.    .    .    .    .

There was testimony from the Carroll sons as well as Moore, of occasions when each was in the airplane when Carroll and Brashers were flying together. Carroll always sat in the pilot's—or left seat—and Brashers sat in the right seat. There were occasions when Brashers operated the plane unassisted from takeoff to landing. She was then always in the right hand seat. Moore had also flown with Carroll in the Buccaneer, and Carroll sat on the left and Moore on the right.

On the day of the casualty, Carroll and Brashers had left the airstrip to buy fuel at the Springfield airport. The only other person with contact with Carroll and Brashers near the time of their deaths was Leonard Patton, the attendant at the Springfield airport who gave directions to park the Buccaneer that day for refueling. The plane was directed in the service area by means of hand signals. Patton testified that he gave those directions to Carroll with whom he had eye contact for that purpose. Carroll responded to the communications by nodding. Patton acknowledged that it is not possible to tell from the outside who is taxiing the craft on the ground. That is done with the rudder pedals that are on the floor of the airplane. The witness testified also that at take-off, it was Carroll who requested clearance for departure. The plane crashed thirty minutes later.

At the close of the evidence, the court determined that the issue for jury decision was whether or not the insured Carroll was a passenger "at the time this airplane went into a crash attitude." There was a dispute as to which party properly bore the burden of proof on that issue.

The trial court found that there was an ambiguity between the policy exclusion [PART VI], which did not cover any loss to an insured person resulting from injury sustained "as a passenger or otherwise in any vehicle or device for aerial navigation, except as provided in PART II," and Rider

---

1. The answer of the defendant Continental Casualty to the petition of the plaintiffs Carroll as well as to the petition of personal representative Sutton to intervene asserts, presumably by inadvertence, the Exclusions of the original PART VI of the policy rather than the PART VI of Rider # 3 in effect at the time of the casualty. The original PART VI fully, and as pleaded, reads:

EXCLUSIONS This policy does not cover any loss to an Insured Person caused by or resulting from: (1) injury sustained in consequence of riding as a passenger or otherwise in any vehicle or device for aerial navigation, except as provided in PART II; (2) declared or undeclared war or any act thereof; (3) service in the armed forces of any country; or (4) suicide or any attempt thereat by the Insured Person while sane or self-destruction or any attempt thereat by the Insured Person while insane.

#1, which provided coverage for an insured riding as a passenger "in any aircraft being used for the transportation of passengers." The court ruled that, on principle, an ambiguity is resolved in favor of coverage, and accordingly the burden rested on the insurer to prove that at the time of loss the deceased was not riding as a passenger. The principle applied, presumably, was that of *contra proferentem* as to an insurance policy with provisions in contradiction.

The analysis of the court rests on a lapse of inadvertence.[2] The policy exclusion [PART VI] was superseded by Rider #3 which was in effect as a policy provision at the time of the casualty. Rider #3 in effect excluded from coverage loss from injury to an insured riding as a pilot or crew member in any aircraft, but not as before under the original exclusion [PART VI], "riding as a passenger or otherwise" in any vehicle for aerial navigation. Thus, there was not the ostensible ambiguity between the Rider #3 exclusion and Rider #1, which expressly affords coverage to a passenger in any aircraft, upon which the court determined the allocation of the burden of proof on the issue of whether the decedent Carroll was a *passenger* within the terms of the policy.

The plaintiffs' theory of recovery under the policy was submitted to the jury by instructions that allocated to the insurer the burden to prove that Carroll was not a *passenger*. The verdict was for the plaintiffs beneficiaries.

On appeal the defendant Continental assigns trial error as to rulings on evidence, denial of a directed verdict, and the allocation to the insurer of the burden of proof on the issue of *passenger*.

■ It is the essential argument of the defendant Continental Casualty that Rider #1 was an insuring clause and that the provision, that coverage under the policy "includes riding as a passenger and not as a pilot or crew member" in any aircraft,

was a description of the peril insured against. And since it befalls to the claimant to prove that the claim sued upon is within the coverage of the policy, the burden to prove that the insured was a passenger in the aircraft at the time of the casualty properly rests on the beneficiaries. *See, e.g., Martin v. Prier Brass Mfg. Co.*, 710 S.W.2d 466, 470[3, 4] (Mo.App.1986). That argument, however, does not explain the necessity, nor the role as a contract term, for the express exclusion in Rider #3 from the coverage of the policy of a loss to an insured person by injury suffered "in consequence of riding as a pilot or crew member" in any aircraft. The burden to prove an exclusion to a coverage already endowed rests on the insurer. *Harold S. Schwartz & Assoc., Inc. v. Continental Cas. Co.*, 705 S.W.2d 494, 498[6, 7] (Mo. App.1985); *Transport Indem. Co. v. Teter*, 575 S.W.2d 780, 784[4, 5] (Mo.App.1978).

The plaintiffs argue, on the other hand, that the peril insured against by the policy is injury or death by accidental means. Accordingly, the limitations on that coverage, first by the original PART II—LIMITED AIR TRAVEL COVERAGE—and then by Rider #1, both of which confined air travel coverage to passengers, function as exclusions upon which the insurer bears the burden of proof. *Truck Ins. Exch. v. Heman*, 800 S.W.2d 2, 4 (Mo.App.1990). They conclude that the allocation to the insurer of the burden of proof on the issue of *passenger* was legally valid and the return of verdict under proper direction.[3]

This essential contention of error colors two of the points on appeal of the defendant Continental Casualty, and we address them at the outset. The defendant insurer argues that the trial court erred in giving Instruction No. 6 and in failing to give Instruction No. A.

Instruction No. 6 submitted:

Your verdict must be for plaintiffs unless you believe plaintiffs are not entitled to recover by reason of Instruction No. 7.

Instruction No. 7 submitted:

of Rider #3 in effect at the time of the airplane mishap. *See,* fn. 1.

---

**2.** It is the same inadvertence that led the defendant Continental Casualty to plead as an affirmative defense the exclusions of the original PART VI of the policy rather than the PART VI

**3.** *See* APPENDIX

Your verdict must be for defendant if you believe Joseph Brandon Carroll was not a passenger in the aircraft at the time of his death.

Instruction No. A tendered, and refused, for submission:

Your verdict must be for plaintiffs if you believe

First, defendant issued its policy of life insurance to Joseph Brandon Carroll, and

Second, the policy was in force on April 12, 1987 when Joseph Brandon Carroll died, and

Third, plaintiffs then were the beneficiaries of the policy, and

Fourth, the death of Joseph Brandon Carroll was the result of accidental means, and

Fifth, the accident occurred while Joseph Brandon Carroll was riding as a passenger on the aircraft, and

Sixth, as a direct result of such accident Joseph Brandon Carroll lost his life,

unless you believe plaintiffs are not entitled to recover by reason of Instruction Number ___.

The verdict director, Instruction No. 7, rests on the theory of recovery that the risk insured against by the group policy issued by Continental Casualty to Litton Industries, Inc. and purchased by the decedent Carroll was death from injury by accidental means. As constructed, the verdict director assumes the facts of a subsistent policy in effect at the time of the casualty, a loss caused by a peril insured against and notice of the loss to the insurer, and proof of loss made as required by the policy. That is to say, the instruction assumes proof by the plaintiffs of a *prima facie* case of coverage under the Continental group policy. *See Martin v. Prier Brass Mfg. Co.*, 710 S.W.2d at 470[3, 4]. It directs a verdict for the plaintiffs unless the jury finds the proposition submitted by Instruction No. 7, the affirmative defense that the insured Carroll was not a passenger in the aircraft at the time of his death.

The insurer Continental does not complain that verdict director No. 6 assumes

any fact in dispute. Indeed, the issuance of the policy to Carroll, that the policy was in effect when Carroll died, that the death was by accident and that plaintiffs were beneficiaries of the policy were all stipulated fact, or otherwise not contested. It is not in any event proper MAI practice to submit for jury finding elements of the proof already conceded. *Reed v. Sale Memorial Hosp. & Clinic*, 698 S.W.2d 931, 939[16] (Mo.App.1985). Continental complains, rather, that Instruction No. 6 commits an error of law by neglecting to submit as an essential element of recovery the finding that Carroll was riding as a passenger and not as a pilot or crew member at the time of the crash and death. This rests on the premise, as already explained, that Rider #1 constitutes the insuring clause.

An insuring clause of an accident and health contract of insurance identifies the parties, who are the insurer and insured. Also, "it states that one insures the other subject to exceptions and limitations in the policy, and agrees to pay for loss covered by the policy to the extent therein provided. In consideration of payment of premiums by the insured, the insurer promises to pay benefits in the event of an occurrence of any of the losses insured against." W. MEYER, LIFE & HEALTH INSURANCE LAW § 12.1 (1972); *See also* 10 COUCH ON INSURANCE 2d § 14:1 (Rev. ed. 1982).

■ Thus, by definition and as well as precept, the insuring clause encompasses both the general insuring agreement as well as the restrictions and exceptions that limit that coverage, and hence the risk insured against. *See Rafiner Elevator Works v. Michigan Mut. Liability Co.*, 392 S.W.2d 240, 241 (Mo. banc 1965); *MFA Mut. Ins. Co. v. Berry*, 481 S.W.2d 513, 514 (Mo.App.1972); 10 COUCH ON INSURANCE 2d § 41:1 (Rev. ed. 1982).

■ Those terms all appear on the front page of the master policy, which recites that in consideration of the payment of premium, Continental Casualty Company agrees

to insure eligible persons of the Holder [Litton Industries, Inc.] and the eligible

dependents ... for loss resulting from injury, to the extent herein provided and subject to all of the exceptions, limitations and provisions of this policy.

.　　.　　.　　.　　.

DEFINITIONS

"Injury" whenever used in this policy means bodily injury caused by accident occurring while this policy is in force as to the Insured Person and resulting directly and independently of all other causes in loss covered by this policy.

This is the insuring clause of the group policy coverage that decedent Carroll purchased.

Rider # 1 by its very terms does not purport to function as an insuring clause. The authentic inquiry, rather, is whether Rider # 1 endows coverage or excludes coverage. *Transport Indem. Co. v. Teter*, 575 S.W.2d at 784[4, 5]. A policy of insurance may restrict or confine the coverage of the policy by either an affirmative delimitation of or by an exception to the coverage. 10 COUCH ON INSURANCE 2d § 41:5 (Rev. ed. 1982). In either case, it functions to eliminate from coverage losses that are the proximate result of conduct or events covered by the policy and which, except for the exclusion or limitation clause, would remain under the coverage. *Truck Ins. Exch. v. Heman*, 800 S.W.2d at 4[4]; 10 COUCH ON INSURANCE 2d § 41:380 (Rev. ed. 1982).

The parties stipulate as fact that Carroll purchased the group insurance coverage from the defendant Continental Casualty and that the policy was in effect at the time of his death.[4] The defendant does not contest on this appeal that the death of the insured Carroll was the result of accidental injury. The death of the insured Carroll from accidental means proved *prima facie* a recovery under the policy. *Piva v. General Am. Life Ins. Co.*, 647 S.W.2d 866, 870 (Mo.App.1983); *Cappo v. Allstate Life Ins.*

*Co.*, 809 S.W.2d 131, 133[2] (Mo.App.1991). Thus, the plaintiffs proved that the claims came within the risk insured against under the general insuring agreement of the policy.

Continental Casualty denied accidental death benefits, not under the general insuring agreement, but under Rider # 1. That rider, as any other provision of an insurance contract, must be given its plain meaning. *Harrison v. MFA Mut. Ins. Co.*, 607 S.W.2d 137, 142[6, 7] (Mo. banc 1980). Its express terms confirm that the coverage of the policy includes an insured "riding as a passenger," but excludes an insured riding "as a pilot or crew member" in any aircraft being used for transportation of passengers. In other words, Rider # 1 does not add to the coverage an insured riding a passenger aircraft as a passenger, but excludes from coverage an insured riding as a pilot or crew member of the aircraft. Thus, the theory of the defendant insurer that the fact that the decedent Carroll was a passenger in the aircraft at the time of his death by accident was a proof required of the plaintiffs to establish a *prima facie* submission is not valid.

Rider # 3, a more formal exclusion, corroborates the purpose of Rider # 1 to deny a pilot or crew member from the coverage of the policy. Rider # 3 in Exclusions (1) and (2) by clear inference does not except from coverage an insured who is not riding as a pilot or crew member in a passenger aircraft. That is to say, an insured who is riding as a passenger in a passenger aircraft is within the general coverage of the policy. Rider # 1 and Rider # 3, however ungainly as an expression of intention, are to be read together and given meaning if reasonably possible. *Brugioni v. Maryland Cas. Co.*, 382 S.W.2d 707, 712[5, 6] (Mo.1964). They are to be understood in their plain and ordinary meaning, but to the extent that they are open to different

---

4. The stipulation inaptly describes the policy as Accidental Death and Dismemberment Insurance Coverage. The ACCIDENTAL DEATH AND DISMEMBERMENT INDEMNITY provision describes one of the scheduled benefits that accrue under the policy from certain losses from accidental injury. It provides [Rider # 3,

PART III], the benefit of 100% of the principal sum when injury results in loss of life. The policy does not denominate itself, but is referred to variously as an accident, or accident and health policy, or usually now in the industry, as a "health" policy. W. MEYER, LIFE & HEALTH INSURANCE LAW § 12.1 (1972).

constructions, that most favorable to the insured governs. *Meyers v. Smith*, 375 S.W.2d 9, 16–17[10, 11] (Mo.1964); *Maryland Cas. Co. v. Huger*, 728 S.W.2d 574, 578–79[1] (Mo.App.1987). In terms of these principles, the riders read together as an integer and within the context of the general insuring agreement and comprehensive insuring clause, the coverage of the policy without further definition includes loss by accident to an insured while riding as a passenger in a passenger aircraft and excludes an insured while riding as a pilot or crew member.

■ The theory of the case pursued by the defendant Continental Casualty, that the fact of passenger in a passenger aircraft was an element of the plaintiffs' proof, was mistaken.[5] Under the policy provisions and the evidence, defendant insurer could have avoided coverage only by reliance on the exclusionary terms of Rider # 1 and Rider # 3 that the status of the insured Carroll in the aircraft at the time of the accident was as a nonpassenger— that is as a crew member or pilot. The burden was on the insurer to prove facts that would make the exclusion applicable. *Kenilworth Ins. Co. v. Cole*, 587 S.W.2d 93, 97[7] (Mo.App.1979); *Harold S. Schwartz & Associate, Inc. v. Continental Cas. Co.*, 705 S.W.2d at 498[6, 7]. The insurer adopted an invalid theory of the case.

■ The defendant insurer simply did not submit the issue of the exclusion of the claims from coverage under the crew member or pilot exception of the policy, nor assume the burden to prove the issue. A different and mistaken strategy was adopted on the misreading of Rider # 1 as an "insuring clause" that placed on the insured the burden to prove his status of passenger as an element of *prima facie* recovery under the policy. Thus, the incidental and variant argument, that the evidence shows "as a matter of law" that the

decedent "was either a pilot or a crew member," cannot be heard.

It is for these reasons, also, that the contentions on appeal that the court erred in refusing to direct a verdict for the insurer at the end of plaintiffs' case and at the close of all the evidence are entirely without merit.

■ The complaints made to the trial court and now to this court on appeal as to the plaintiffs' instructions simply do not avail as legal grounds for error, and for the same compound of reasons. Instruction No. A, as submitted by the defendant insurer was properly refused. It imposed on the plaintiffs an unneeded element of proof—that the insured was riding as a passenger in the aircraft—and so misformulates the plaintiffs' theory of recovery under the policy and evidence. It also gave for finding to the jury facts conceded and otherwise not in contention.

On appeal, the defendants also make two contentions of evidentiary error. The first related to the evidence of numerous witnesses that the decedent Carroll always occupied the left seat, the pilot's customary place, even when Brashers was flying and maintained complete control of the aircraft. There was testimony also that Carroll occupied the left seat when Moore flew the airplane. The testimony was presented to show that Brashers was capable of and did fly the aircraft from the right seat. The complaint is made that the evidence of prior flights was too remote to be relevant and was otherwise prejudicial because the proof was entirely circumstantial.

The status of the decedent insured Carroll in the airplane at the time of his death was not essential to the *prima facie* proof of the claims of the beneficiaries under the policy. The fact of who was flying the airplane, either as a crew member or as a pilot, would have borne on the exclusion of the claims from coverage, but that exception was not submitted to the jury by the

---

5. The theory of the defendant insurer asserted on the motions for directed verdict, and at other times, was that the plaintiffs were bound to prove as part of their case not only that the insured was a passenger, but also not a pilot or

crew member. *"Under the insurance policy, plaintiffs have the burden of proving that he died of an insured peril, and part of that is that he died while acting as a passenger and not as a pilot or crew member."* [Emphasis added]

insurer. Thus, the case, as properly submitted, did not depend upon the evidence about which the insurer now complains. The argument of nonrelevancy and prejudicial effect of the testimony which the insurer poses is now only hypothetical.

The other complaint relates to the refusal of the trial court to allow Geier, presented by the insurer as an expert, to give his opinion that decedent Carroll was riding the airplane as a pilot on the day of the casualty. The witness Geier was an aviation consultant with long FAA experience and familiarity with aviation regulations. He was a specialist in the operation of aircraft, which included pilot certification under FAA regulations.

The witness was asked to assume the facts in evidence that Carroll and Brashers were the only two occupants of the airplane, that Brashers could not have compatibly with her certificate under FAA regulations carried a passenger on a plane, that Carroll was within the medical certificate requirements of a pilot on the day of the casualty, and that Carroll took the directions from the attendant at the Springfield airport in operating the plane and then communicated with the tower at takeoff. He was asked additionally and then for opinion, "[I]f Joseph Carroll was involved in a crash with Carolyn Brashers in that plane, would he have been the pilot of that aircraft?"

There was objection by the plaintiffs, and the court ruled that the objection would be sustained unless defendant added to the question, "... and been in compliance with Federal Aviation regulations." Counsel for defendant complied, and posed to the witness, "Adding one additional item, Mr. Geier, and that in so doing he was in compliance with regulations, could he have been the pilot of that aircraft?" The witness responded, "Yes." Counsel asked also, "Could he have been a passenger in that aircraft?" The witness responded, "No, he could not have." Counsel asked again, more pointedly, "So at the time of the crash on April 12th of 1987, being in compliance, he could not have been a passenger." The witness responded again,

"That is correct." Counsel asked even again, "And if, in fact, Mr. Geier, we don't assume those facts which I have just related to you, and based solely upon the documents and the FAA regulations, being in compliance, could he have been a passenger in that aircraft at the time of this crash on April 12 of 1987?" The witness answered for the third time, "He could not have been a passenger."

The complaint on appeal is that it was error for the trial court to refuse to allow Geier to give opinion that Carroll was riding as a pilot in the aircraft on April 12, 1987, but limited the response to whether Carroll was riding as a pilot in compliance with FAA regulations. It is a curious complaint for a number of reasons.

Firstly, there was no objection to the direction of the trial court as to how the question to the expert for opinion was to be posed. The defendant accepted the ruling and used it to full advantage. Secondly, the entire antecedent inquiry of the witness by defense counsel was in terms of FAA regulations: Thus, the opinions elicited from the witness Geier that Carroll could not be a passenger when Brashers was flying the craft because Brashers as a student pilot was not licensed to carry a passenger, and that Carroll was the pilot because he was the only occupant then licensed to carry a passenger were all premised on Geier's expertise with FAA regulations and posed in terms of those regulations. Ironically, the objections by plaintiffs' counsel to the opinions given in this course were met by defense counsel's reference to the acknowledged expertise of the witness in FAA regulations. The direction by the court that the expert opinion of the witness that Carroll was riding as a pilot be posed in terms of FAA regulations merely conforms to the mode of questioning established by defense counsel.

If counsel meant to elicit from the expert witness an opinion in a different context, and was denied that evidence by the ruling of the court, then the court was owed an offer of proof in order to understand the objection and correct the error. *Frank v. Environmental Sanitation Management,*

*Inc.*, 687 S.W.2d 876, 883[14–15] (Mo. banc 1985). The defendant argues nevertheless that a court of review will consider excluded evidence even in the absence of a definite offer of proof where there is "a complete understanding based on the record of what the excluded testimony would have been," and where the objection was to a "category of evidence rather than to specific evidence," and where the evidence would have helped the proponent. *Destin v. Sears, Roebuck & Co.*, 803 S.W.2d 113, 116[5, 6] (Mo.App.1990).

The explanation that the defendant offers defeats any reason to indulge the narrow exception that *Destin, Frank,* and a few other cases allow where the objection to exclusion of evidence has not been preserved by an offer of proof. The defendant explains, "The record clearly indicates that had Mr. Geier been permitted to offer his opinion, he would have testified that even if Ms. Brashers was physically operating the plane on August 12, 1987, Mr. Carroll was, at all times, the pilot of the aircraft and could not have been a passenger." But this was, of course, because the FAA regulations constituted him as the pilot by virtue of his certification and her lack of certification, irrespective of whether she was actually operating the craft. The excluded question and answer, therefore, were to the same effect as those actually given and received. In fact, that answer was already before the jury more than once, and in terms of FAA compliance. The claim of error is denied.

In any event the cogency of a complaint of an expert opinion erroneously excluded is lost in a litigation where the evidence relates to an issue never submitted to the jury or necessary to the verdict. The litigants settled among themselves that whether the insured was a *passenger,* and not a *pilot,* was the dispute for the jury to resolve. Thus, were we to assume, contrary to usual principle, that the insurance policy intended a technical and not ordinary meaning for the term *pilot* so as to allow scope for an expert opinion, the subject of the opinion was not relevant to any material issue, and hence its exclusion could not have been prejudicial.

The judgment is affirmed.

All concur.

## APPENDIX

The pleadings present a common law action for breach of contract, and the appeal argues errors of state insurance law, evidence and jury instructions under state procedures. The parties did not raise or address in the trial court the question of whether the claim of the beneficiaries under the group accidental injury policy is properly covered by the Employee Retirement Income Security Act, 29 U.S.C. §§ 1001 *et seq.* [ERISA] rather than by state law. ERISA, if applicable, supersedes all state law, except for state insurance, banking and securities regulations. 29 U.S.C. § 1144(b)(2)(A). A state common law contract action for benefits under an ERISA regulated insurance policy is preempted by federal law under this section. *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 48, 107 S.Ct. 1549, 1553, 95 L.Ed.2d 39 (1987); *St. Louis Children's Hosp. v. Commerce Bancshares, Inc.*, 799 S.W.2d 87, 91[4] (Mo.App.1990).

ERISA confers on the district courts of the United States exclusive jurisdiction of civil actions brought under its provisions, except that for actions under subsection (a)(1)(B) of § 1132, "state courts of competent jurisdiction and district courts of the United States shall have concurrent jurisdiction." 29 U.S.C. § 1132(e)(1). The jurisdiction reserved for concurrent exercise relates to civil actions to recover benefits due a participant or beneficiary under the terms of an ERISA plan. It includes actions to recover benefits under an *employee welfare benefit welfare plan*—a plan established or maintained by an employer or employee organization for the purpose of providing through the purchase of insurance, medical, surgical, hospital benefits in the event, among others, of sickness, accident or death. 29 U.S.C. § 1002(1).

The question of whether the group policy issued by the defendant Continental Casu-

alty to Litton Industries, Inc., employer of the deceased Carroll, was in fact a *plan* within ERISA, therefore, would in the usual course be a question raised and adjudicated in the trial court. *Wickman v. Northwestern Nat'l Ins. Co.*, 908 F.2d 1077, 1082[4] (1st Cir.1990); *Gahn v. Allstate Life Ins. Co.*, 926 F.2d 1449, 1451 (5th Cir.1991). If so, then the state court exercises a concurrent jurisdiction with the federal district courts and the state law is preempted, and the provisions of the plan under which the beneficiaries Carroll seek death benefits must be interpreted under principles of federal law. *Dependahl v. Falstaff Brewing Corp.*, 653 F.2d 1208, 1215–16[5] (8th Cir.1981). In very effect, although brought in state court, such an action is regarded as arising out of the laws of the United States. *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. at 55, 107 S.Ct. at 1557.

For instance, the Missouri state contract law principle of construction that an ambiguity in an insurance policy be resolved in favor of the insured contradicts the federal common law principle applicable to ERISA that the terms of the plan are to be accorded "their ordinary, and not specialized, meanings." *Brewer v. Lincoln Nat'l Life Ins. Co.*, 921 F.2d 150, 154[4] (8th Cir.1990). In questions under accident insurance coverages, moreover, "the reasonable expectations of the insured when the policy was purchased is the proper starting point for a determination of whether an injury was accidental under its terms." *Wickman v. Northwestern Nat'l Ins. Co.*, 908 F.2d at 1088[11].

The question of whether the beneficiaries claim under an ERISA plan was not raised in the trial court, nor adjudicated. Nor is it an issue addressed by the parties on appeal. We raise the question as our own initiative in order to acknowledge *Enlow v. Fire Protection Sys., Inc.*, 803 S.W.2d 148 (Mo.App.1991), and to make a distinction.

In *Enlow* the wife claimed as the surviving spouse beneficiary under an employees retirement plan. The parties agreed that the retirement plan was within the scope of ERISA, but nevertheless failed to brief "the question of federal preemption." *Id.* at 151. The court remarked, "As the question addresses our subject matter jurisdiction, we decide it *sua sponte*." *Id.* It noted also that in coming to judgment the trial court did not "specifically rule on the [wife's] state common law actions as set out in her petition," but rather ruled on "the plain meaning of the [retirement] [p]lan without reference to Missouri law." The opinion concluded, "As such, we have jurisdiction pursuant to 29 U.S.C. § 1132(e)(1)."

The jurisdiction granted a state court under 29 U.S.C. § 1132(e)(1), of course, is to adjudicate concurrently with the federal district courts claims under ERISA plans that provide for death and other benefits through the purchase of insurance, among other means. A state court already has jurisdiction to adjudicate claims for those types of benefits, but under non–ERISA plans. Thus, in either instance, the state court has jurisdiction of the subject matter. What a claim in a state court for benefits under ERISA preempts, therefore, is not state court subject matter jurisdiction, but state law. It works a federal preemption of state law and state causes of action. *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. at 55, 107 S.Ct. at 1557. Federal preemption under 29 U.S.C. § 1132(e)(1), therefore, is of choice of law, and not of subject matter in the jurisdictional sense. *Hughes v. Blue Cross of N. California*, 215 Cal.App.3d 832, 263 Cal.Rptr. 850, 860 (1989).

Lack of subject matter jurisdiction cannot be waived, but may be raised for the first time on appeal. *Elbert v. Elbert*, 833 S.W.2d 884, 887[2–4] (Mo.App.1992). Choice of law may be and has been waived. Our review of the issues on appeal proceeds as presented. *Voelker v. Saint Louis Mercantile Library Ass'n*, 359 S.W.2d 689, 693[1, 2] (Mo.1962); *Johnson v. Rival Mfg. Co.*, 813 S.W.2d 78, 80[1, 2] (Mo.App.1991).